**Jassim Mohamed Thunayan ALGHANIM, Plaintiff-Appellant,**

v.

**The BOEING COMPANY, Defendant-Appellee.**

**Nos. 71-1686, 71-1892.**

United States Court of Appeals, Ninth Circuit.

March 9, 1973.

Jennings P. Felix (argued), Thomas J. Kraft, of Jennings P. Felix and Associates, Seattle, Wash., for plaintiff-appellant.

Keith Gerrard (argued), Randall Revelle, of Perkins, Coie, Stone, Olsen & Williams, Seattle, Wash., for defendant-appellee.

Before HAMLEY, HUFSTEDLER, and GOODWIN, Circuit Judges.

HAMLEY, Circuit Judge:

These two appeals, consolidated for argument and disposition, present contract and tort issues concerning the scope of, and the method of terminating, a sales representative agreement and questions concerning district court procedures pertaining to discovery, amendment of pleadings and motions for summary judgment.

The litigation arises out of the efforts of The Boeing Company (Boeing) to sell its airplanes in Kuwait, Arabia, and other nations along the Persian Gulf. Boeing's prime prospect in this Middle East market was Kuwait Airways Corporation (KAC), a state-owned corporation. Yet, for years prior to 1966, Boeing had been unable to sell to Kuwait Airways or other airlines in this general area. Finally, Boeing determined that what it needed was an influential Kuwaiti citizen as its sales agent. After consultation with the American Embassy in Kuwait and Faisal Al-Fulaij

(Al-Fulaij), chairman of the board of KAC, Boeing selected Jassim Mohamed Thunayan Alghanim (Alghanim) as its sales agent. Alghanim is the brother-in-law of Al-Fulaij.

In November, 1966, Alghanim and Boeing executed a written agreement by which Alghanim agreed to represent Boeing in promoting the sale of Boeing Models 707, 720, 727 and 737 type aircraft in Kuwait. Clause 6 of the agreement, defining the area covered by such representation, was later amended to include, in addition to Kuwait, the Sheikdoms of Bahrain, Doha, Dubai, Abu Dhabi and Sharja. Under clause 7, the agreement was to continue in full force and effect until terminated by either party giving sixty days written notice to the other party. Clause 11 provides that the agreement shall be governed by the laws of the State of Washington. The compensation to be paid the representative was provided for in clauses 4 and 5, the pertinent parts of which are quoted in the margin.[1]

In 1967, with the assistance of Alghanim, Boeing executed a contract with KAC for the sale of three Model 707 aircraft for a sales price of approximately twenty-five million American dollars. Alghanim received full payment of his three percent commission on this sale. The twenty-five million dollar figure mentioned above did not include the substantial sum KAC paid Boeing for major component equipment, accessories, spare parts, and other items and services which Boeing delivered to KAC at the time the airplanes were delivered. Alghanim received no commission on the sale of any of these additional materials and services.

Boeing thereafter conducted further negotiations with KAC concerning the purchase of additional aircraft. According to Alghanim, during this period Al-Fulaij asked Boeing to cancel its agreement with Alghanim.[2] By letter of June 12, 1969, Boeing gave Alghanim sixty days notice of termination, but sent immediate notice of cancellation to KAC. KAC did not buy any additional aircraft from Boeing, nor did Boeing, at least during this sixty-day period, sell any aircraft in the expanded area covered by the representation agreement.

Alghanim filed suit against Boeing in the United States District Court for the Western District of Washington on December 19, 1969 (Civil No. 8692). He sought damages in the sum of four hundred thousand dollars "or other appropriate amount" for (1) three percent commission on spare parts sold in connection with the sale of aircraft to KAC in 1967, (2) three percent commission on any sales made or contracted to be sold by Boeing during the period of the agreement in the prescribed territory, and (3) damages for Boeing's action in assertedly wrongfully terminating the agreement.

Following rather extensive discovery, the cause was set for trial on February 10, 1971. On January 7, 1971, Alghanim filed a motion for leave to file an amended complaint. The amended complaint would expand the term "spare parts," as used in the original complaint, and add two new legal theories. These new theories were: (1) Boeing had tor-

---

1. Clause 4 provides that
   "Full compensation for Representative's performance of this Agreement shall be the payment . . . of an amount equal to Three percent (3%) of the purchase prices, as hereinafter defined, of all Model 707, 720, 727 and 737 type aircraft sold by Boeing during the period of this Agreement to purchasers having their principal office and principal place of business in the territory specified in Clause 6."
   Clause 5:

"for the purpose of Clause 4 hereof, the term 'purchase prices' shall mean the prices of aircraft as set forth in the firm agreement to purchase at the time of execution thereof."

2. Alghanim asserts that Al-Fulaij took this action because Alghanim refused to pay Al-Fulaij one-third of Alghanim's commission.

tiously interfered or conspired to interfere with its representation agreement with Alghanim, and (2) Boeing had defamed Alghanim by wrongfully terminating the agreement. On January 11, 1971, the trial was continued to February 16, 1971.

On January 15, 1971, a hearing was held on Alghanim's motion for leave to file an amended complaint. During the course of this hearing the district court indicated that Alghanim could amend his original complaint to expand the term "spare parts," as indicated in the margin.[3] But the court stated that it would deny leave to file an amended complaint adding the two new theories referred to above. The reason orally given by the court for denying this motion was that neither of the new theories stated a claim upon which relief could be granted.[4]

On January 18, 1971, Alghanim propounded twenty-three interrogatories of Boeing. The bulk of these interrogatories were directed to discovering what spare parts were sold, the prices for them, and the supporting documents. Two days later Alghanim moved for an order requiring Boeing to answer the interrogatories within twenty days, so that the due date would fall prior to the trial set for February 16, 1971. Boeing opposed the motion for an order advancing the time for answering the interrogatories.[5]

A hearing thereon was held on January 29, 1971. The court ordered Boeing to supply Alghanim, within the twenty-day period, information as to the dollar value of the spare parts Boeing sold KAC,[6] but denied the motion with respect to any other information requested.

In the meantime, on January 26, 1971, Boeing moved for summary judgment for defendant in the original action. Boeing made this motion on the grounds that, under the undisputed facts, (1) Boeing never agreed to pay Alghanim a commission on spare parts or accessories, (2) Boeing has not sold nor entered into a contract to sell any other aircraft in Kuwait or the Persian Gulf area, and (3) Boeing had a right to terminate its representation agreement with Alghanim.

Boeing noted this motion for hearing on February 5, 1971.[7] Two days later, on January 28, 1971, Boeing supported this motion with a brief and two affidavits. The brief also makes reference to various depositions, cables and an affidavit which had been previously filed.

Alghanim promptly moved, pursuant to Rule 56(f), F.R.Civ.P., to postpone the hearing on this motion until the day fixed for trial (February 16, 1971), or

---

3. Wherever Alghanim's original complaint uses the terms "spare parts," "aircraft parts," or "parts," the following phrase was to be substituted:
   "spare parts, accessories, components, equipment, tools, personal services, training, technical publications, manuals, computer card decks, and other things essential to the operation and maintenance of the aircraft."

4. The former order to this effect, entered on January 29, 1971, recited no reason for denying the motion to add the new claims.

5. Boeing argued: (1) it was impracticable for Boeing to answer the interrogatories in advance of the thirty days allowable under Rule 33(a), F.R.Civ.P., because the answers require meetings or other contact with Boeing's personnel in Beirut, Lebanon and other distant parts of the world, and would also heavily burden Boeing's preparation for trial, (2) all of the information needed to propound Alghanim's interrogatories was available to his attorneys by no later than the end of August, 1970, and the requests are therefore untimely, and (3) Alghanim had offered no justification for submitting interrogatories less than a month before trial.

6. Using the expanded definition of "spare parts."

7. On February 4, 1971, which was one day prior to the noted hearing on the motion for summary judgment, counsel for Boeing filed a statement in support of the motion which quotes Article 59 of Kuwaiti Law No. 5, "The Law Governing Legal Relations Involving a Foreign Element" (1961).

such other date as would give Alghanim twenty-five days in which to respond. In a supporting affidavit, counsel for Alghanim alleged that plaintiff wished to have Alghanim make an affidavit in opposition to the motion for summary judgment, but since Alghanim was then in Kuwait and the one-way mailing time between Seattle and Kuwait is approximately five to seven days, this would not be possible prior to February 5, 1971. Counsel for Alghanim also asserted that plaintiff was continuing his discovery proceedings and that the depositions of two Boeing employees then scheduled for February 2 and 3, 1971, could not be transcribed and filed by February 5, 1971.

At the same time, counsel for Alghanim moved for an order postponing the date set for trial for sixty days, so that plaintiff could have the additional time he needed for discovery and trial preparation. In his affidavit supporting this motion, counsel for Alghanim called attention to the difficulties he had experienced in preparing for trial because of Middle East tension which hampered travel.

On February 1, 1971, Boeing moved to quash Alghanim's notice of depositions and subpoenas duces tecum directed to Donald McLaren and M. W. McClung. Boeing asserted that Alghanim was thereby attempting to gain information which had been denied to him in the order, described above, pertaining to Alghanim's interrogatories. Boeing also asserted that the two subpoenas had not been effectively served because a copy of the subpoena had not been delivered to M. W. McClung, and neither he nor Donald McLaren had been tendered the fee, as required by Rule 45(c), F.R.Civ.P.

On February 5, 1971, the district court denied Alghanim's motion to postpone the hearing on Boeing's motion for summary judgment. The hearing was held on that day and, at the close, the court orally announced that it would grant the motion for a summary judgment for Boeing. At the same time the court struck, as moot, Alghanim's motion to extend the trial date and Boeing's motion to quash Alghanim's notice of depositions and subpoenas. The formal order granting summary judgment for Boeing was entered on March 1, 1971. Alghanim took a timely appeal from this judgment. (No. 71–1686 in this court.)

In the meantime, on January 22, 1971, Alghanim filed a second action against Boeing (Civil No. 9455), setting out, in two claims, the substance of the two theories he had sought to advance in his proposed amended complaint in the original action. On his first claim in this new action Alghanim sought damages in the sum of two million dollars and, in his second claim, he sought damages in the sum of one hundred fifty thousand dollars.

Boeing moved to dismiss this action on the grounds that it failed to state a claim upon which relief could be granted and that the claims there asserted are barred by the doctrine of res judicata. After a hearing, the district court, on April 15, 1971, entered an order in which, treating Boeing's motion to dismiss as one for summary judgment for defendant, such motion was granted on the grounds of res judicata and collateral estoppel, and judgment for Boeing was entered. Alghanim appealed therefrom. (No. 71–1892 in this court.)

We consider first the questions arising from the original action.

One ground urged by Alghanim why the district court erred in granting summary judgment in the original action is that the court abused its discretion in denying Alghanim's motion for an extension of time to respond to the motion. In this connection Alghanim relies upon Rule 56(f), F.R.Civ.P., quoted in the margin.[8]

---

8. "(f) *When Affidavits are Unavailable.* Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for

The prime reason advanced by Alghanim why he needed an extension of time to respond to the motion was that it was impossible to prepare affidavits, mail them to Kuwait, and have them returned to Seattle prior to the hearing scheduled for February 5, 1971. The affidavit of Alghanim's counsel as to the five to seven days mailing time between Seattle and Kuwait does not appear to be disputed.

Boeing contends that plaintiff's counsel could have communicated with plaintiff in Kuwait by telephone or cable and in this way could have obtained one or more affidavits from Kuwait prior to the February 5, 1971, hearing. But the indications are that Alghanim, a citizen of Kuwait, was unfamiliar with the manner of preparing affidavits to meet the requirements of the federal rules.

■ In passing upon requests for additional time to respond to a motion for summary judgment, any special problems in communicating with prospective affiants, and the absolute right of a party to respond, must be taken into consideration. *See* Harris v. Pate, 440 F.2d 315 (7th Cir. 1971). *See also*, Cohen v. Cahill, 281 F.2d 879 (9th Cir. 1960).

Boeing calls attention to the fact that plaintiff did not, in support of his motion for a postponement of the hearing on the motion for summary judgment, allege the essential facts he expected to

establish by the affidavits he wished to obtain from Kuwait.

■ Alghanim, as a party to the action, had an absolute right to file his own personal affidavit in opposition to the motion for summary judgment within the time provided by Rule 56 or an extension thereof required by the exercise of a sound discretion. Apart from this, however, Alghanim's counsel filed, in the district court, on the day prior to the hearing on Alghanim's motion for an extension of time and on Boeing's motion for summary judgment, a comprehensive brief outlining the relevant facts he hoped to establish by such an affidavit.[9] In our opinion, Alghanim thereby alleged that he would, if given an opportunity, present by affidavit "facts essential to justify his opposition," to quote Rule 56(f), F.R.Civ.P.

■ We conclude that plaintiff's counsel ought to have been given a reasonable opportunity to obtain an affidavit from at least his client in Kuwait. Alghanim would then at least have had his day in court, however effective his affidavit turned out to be. We recognize that an adequate extension of time might have necessitated a postponement of the trial date. But it was Boeing, not Alghanim, which chose to wait until three weeks before trial before filing the motion for summary judgment. It was Boeing which breached the ten-day notice provision of Rule 56(c), by filing

judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

9. Among other things, Alghanim's counsel hoped, by this means, to develop facts relevant to the following matters:

1. Whether the term "aircraft" as used in the agreement is ambiguous, such that it may have been intended that the term include spare parts and accessories for use on the Model 707s Boeing sold to KAC.

2. Whether the reason the agreement does not contain an express provision pertaining to commissions on spare parts is because, during the negotiations, a Boeing representative falsely as-

sured Alghanim that Boeing does not manufacture spare parts, leaving Alghanim with the belief that he was entitled to commissions on whatever Boeing actually did manufacture and sell in connection with airplanes delivered within Alghanim's territory.

3. Whether Boeing terminated the agreement because Al-Fulaij secretly told Boeing to do so because Alghanim had not shared his commission with Al-Fulaij and, if so, whether a termination for such a reason was permissible under the agreement.

4. Whether Boeing gave KAC immediate notice of cancellation of agreement without awaiting expiration of the sixty-day period and, if so, whether Alghanim was prejudiced thereby.

affidavits and a statement of Kuwait law within ten days of the time set for the summary judgment hearing.

Under all of the circumstances we conclude that the district court abused its discretion in denying Alghanim a reasonable postponement of the hearing on the motion for summary judgment so that an affidavit or affidavits from Kuwait could be filed. This requires that the summary judgment in the original action be set aside.

We do not at this time intimate any view as to the merits of the motion, or as to whether, as Alghanim contends, some of Boeing's supporting affidavits set forth facts which would not have been admissible in evidence, or as to whether there remain genuine issues of material fact. See Rule 56(c) and (e), F.R.Civ. P.

Inasmuch as further proceedings must be had in the original action, and no trial date is presently in the offing, we think Alghanim should be afforded an opportunity to conduct further discovery with reference to any issue pertaining to the motion for summary judgment. This would include discovery with regard to whether Boeing sold spare parts (using the expanded definition of the term) to KAC, or sold any aircraft or spare parts within the Persian Gulf area as described in the agreement. It would not include, at this time, discovery pertaining only to the issue of damages, although if summary judgment is ultimately denied, plaintiff may wish discovery in this area.

■ There remains for determination, on the appeal from the summary judgment entered in the original action,

Alghanim's contention that the district court erred in denying his motion for leave to file an amended complaint setting out two additional claims against Boeing. As stated above, this motion was denied on the ground that neither of the new theories advanced in the proposed amended complaint stated a claim upon which relief could be granted.[10]

The new claims, pertaining to interference by Boeing with its own agreement with Alghanim, and defamation of Alghanim by cancelling the agreement in the manner asserted, are based upon alleged Kuwait law and, indeed, would have no recognition under Washington law. See Hein v. Chrysler Corp., 45 Wash.2d 586, 277 P.2d 708 (1954), pertaining to tortious interference with one's own contract. There is no Washington statutory or judicial authority for the kind of defamation claim asserted by Alghanim and he does not rely upon common law defamation.

■ The agreement expressly provides that it shall be governed by the laws of the State of Washington. Alghanim argues that this provision should be ignored because this is a contract of adhesion. We need not reach the question of whether, in contracts of adhesion, such a provision is to be ignored, because, in our view, this is not such a contract. It was entered into after detailed negotiation, and Alghanim's views prevailed at least to some extent in arriving at the final form of the contract.[11]

Alghanim also argues that, in any event, this provision of the agreement does not stand in the way of his new claims, because the provision was not in-

---

10. If, in fact, neither of the proposed new theories state such a claim, this would be an adequate ground for denying leave to amend. See Gilbertson v. City of Fairbanks, 262 F.2d 734 (9th Cir. 1959); 3 Moore Federal Practice § 1508(4) (2d Ed. 1968).

11. Alghanim argues that the fact that the commission was increased from one percent to three percent upon his request has no significance because Boeing just added the commissions to the purchase price of the aircraft. But of course, in so doing, the purchase price was substantially increased, thus prejudicing Boeing's competitive position.

tended to permit disregard to Kuwait's "fundamental" law, and has no reference to tort claims such as are assertedly embodied in Alghanim's two new theories.

We are not convinced that there are valid reasons for holding the contract provision in question inoperative as to Alghanim's new claims. It may be that Boeing has gotten itself into some trouble with the government of Kuwait by setting up and terminating a selling agency in a manner allegedly violative of Kuwait law. But as between Boeing and Alghanim, we think the contract provision must govern. While it may be that, in a broad sense, Alghanim's new claims sound in tort, it seems to us they have their roots, even under the pleaded Kuwait law, in contractual relationships between Boeing and Alghanim. They are therefore subject to the contract provision subjecting controversies between the parties to the dictates of the law of Washington.

We accordingly hold that the district court did not err in denying Alghanim's motion for leave to file the amended complaint.

Turning to the appeal from the summary judgment for Boeing entered in Alghanim's second action, affirmance is indicated by what is said above. If, as we have held, the two new counts Alghanim sought to inject into the first action, by means of an amended complaint, fail to state a claim upon which relief can be granted, the essentially identical counts set forth in Alghanim's complaint in the second action are similarly deficient. We need not decide whether, apart from this ground for affirmance, the district court summary judgment in the second action is sustainable on the grounds of res judicata or collateral estoppel.

The judgment under review in No. 71–1892 is affirmed. The judgment under review in No. 71–1686 is reversed, and the cause is remanded for further proceedings consistent with this opinion.