**VISA INTERNATIONAL SERVICE ASSOCIATION, Plaintiff-Appellant, Cross-Appellee,**

v.

**BANKCARD HOLDERS OF AMERICA, Direct Mass Marketing, Inc., Beneficial National Life Insurance Company, Miles MacIntyre, an individual, and David Reichberg, an individual, Defendants-Appellees, Cross-Appellants.**

Nos. 83–2429, 84–2795.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 1985.

Decided March 21, 1986.

Peter Anderson, Wynne S. Carvill, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., John P. Sutton, Inc., Limbach, Limbach & Sutton, San Francisco, Cal., for plaintiff-appellant, cross-appellee.

Michael M. Rosenbaum, Budd, Larner, Kent, Gross, Picillo, Rosenbaum, Greenberg & Sade, Newark, N.J., for defendants-appellees, cross-appellants.

Before POOLE and REINHARDT, Circuit Judges, and KELLER,* District Judge.

---

* Honorable William D. Keller, United States District Judge for the Central District of California, sitting by designation.

KELLER, District Judge:

VISA International Service Association ("VISA") appeals from the district court's denial of its application for further discovery pursuant to Federal Rule of Civil Procedure 56(f), and from the corresponding entry of summary judgment against it. We reverse the denial of the Rule 56(f) application and the entry of summary judgment.

Bankcard Holders of America ("BCH") has filed a cross-appeal from the district court's denial of attorneys' fees and requests a further award of attorneys' fees based on its prosecution of the cross-appeal. We affirm the district court's denial of attorneys' fees and deny the request for attorneys' fees on appeal.

## Background

BCH, an association whose membership is comprised of holders of bank credit cards, mailed offers of various kinds of insurance to holders of VISA credit cards. VISA sued BCH for trademark infringement, claiming that BCH's use of the VISA name and logo on its mass mailings misled consumers into believing that VISA was connected with BCH's offer of insurance.

In March 1981, VISA and BCH entered into a Settlement Agreement, which was implemented by means of a Stipulated Judgment. In essence the two documents provided that BCH could use the VISA name to indicate membership requirements of BCH or means of payment. BCH was prohibited, however, from using the VISA name in a way that would cause public confusion by suggesting that VISA had sponsored or approved the offering. An exemplar of permissible use of the VISA mark was attached to the Settlement Agreement. The Stipulated Judgment provided that the court retained jurisdiction to effectuate and enforce it.

In April 1982, VISA returned to district court seeking relief from the Stipulated Judgment under essentially two theories, each of which has two components:

a. Rescission or modification of the Stipulated Judgment, on the ground that it was causing injury to the public because of confusion.

b. Enforcement or clarification for purposes of enforcement, on the ground that BCH was violating the terms of the Stipulated Judgment.

BCH moved for summary judgment on VISA's claim for rescission or modification. VISA filed an application pursuant to Rule 56(f) to stay the summary judgment motion and to compel responses to interrogatories and requests for production which remained outstanding at the time of the summary judgment motion. The discovery requests sought, *inter alia,* lists of recipients of mailing kits and purchasers of insurance, the kits and policies themselves, and any evidence of communications from insurance commissioners regarding the mailings.

In August 1983, the court granted BCH's motion for summary judgment on the basis that VISA had failed to show any substantial harm to the public. In the same order, the court denied VISA's rule 56(f) application to stay summary judgment and compel discovery. The court also denied BCH's counterclaim for attorneys' fees.

The court then referred the enforcement issue to the magistrate for resolution in a contempt hearing, and adopted the magistrate's findings that, although BCH had arguably violated the Stipulated Judgment, its action did not rise to the level of contempt because of the vagueness of the terms of the Stipulated Judgment.

## I. Enforcement of the Stipulated Judgment

In general, a party entering into a settlement agreement with respect to a trademark will be held to his contract unless enforcement of the contract would result in injury to the public through confusion. If the party seeking rescission can show some injury to the public, as opposed to mere injury to the party's business,[1]

---

1. BCH argues that the public would not be injured even if it were confused because VISA

then the court is to balance the "public interest against confusion, one of the significant purposes of trademark law, against the interest in enforcing contracts...." *T & T Manufacturing Co. v. A.T. Cross Co.*, 449 F.Supp. 813, 827 (D.R.I.), *aff'd*, 587 F.2d 533 (1st Cir.1978), *cert. denied*, 441 U.S. 908, 99 S.Ct. 2000, 60 L.Ed.2d 377 (1979). Thus, the determination whether to rescind or modify is essentially a factual inquiry into the degree or extent of public confusion.[2]

Even if VISA were not entitled to rescission or modification of the Stipulated Judgment based on evidence of public injury, VISA would still be entitled to enforcement of its terms and to that degree of clarification necessary to secure meaningful enforcement. *See Vertex Distributing,*

*Inc. v. Falcon Foam Plastics, Inc.,* 689 F.2d 885, 892 (9th Cir.1982). Because the Stipulated Judgment used the test of public confusion to circumscribe BCH's use of the VISA marks, enforcement and clarification also require a factual inquiry into public confusion.[3]

In short, the factual inquiry relating to public confusion was a predicate to virtually every form of relief sought by VISA. The Stipulated Agreement in this case expressly provided that the court retained jurisdiction "for further orders and directions as may be necessary or appropriate for the construction and effectuation of this final judgment and the Agreement...." Even absent such express language, a district court retains the inherent equitable power to rescind, modify, clarify

offers insurance which is identical to that offered by BCH. Insurance represents a commitment to pay sums of money upon the occurrence of some contingency; hence, the insurer's financial strength would be a material factor in a consumer's decision to purchase insurance. In addition, a consumer might rely on his prior relationship with VISA in choosing his insurance. These issues are the proper subject for further factual inquiry.

2. The dissent argues that the district court need not inquire into the degree and extent of public confusion, based on a "modern view" of the purpose of trademark law that exalts expectations of quality, to the exclusion of consumer preferences as to the source of the goods and services. However, both legal commentators and decisional law appear to be to the contrary. *See, e.g.,* 1 J. Thomas McCarthy, *Trademarks and Unfair Competition,* Section 3:4 (2d ed. 1984) ("the quality function does not replace the source function: it stands alongside it.... Under both the source and quality rationales, unity of source of manufacture or control appears essential."); *T & T, supra,* 449 F.Supp. at 827 ("a trademark protects two different interests: a business' interest in its good will and the public interest in obtaining the quality of goods which it associates with a particular mark").

In *Siegel v. Chicken Delight, Inc.,* 448 F.2d 43 (9th Cir.1971), upon which the dissent relies for the abandonment of the source identification conception of a trademark, this Court dealt with a situation where the holder had licensed its mark to several hundred franchisees. Not surprisingly, the importance of identification of source is greatly diminished in such a context. *Chicken Delight,* 448 F.2d at 48 ("The burgeoning business of franchising has made trade-

mark licensing a widespread commercial practice and has resulted in the development of a new rationale for trade-marks as representations of product quality.").

Moreover, *T & T, supra,* does not stand for the sweeping propositions attributed to it by the dissent. The enforcement of the settlement agreement in that case, despite a finding of likely public confusion, was expressly conditioned on a finding that the harm to the public from such confusion was insignificant. 449 F.Supp. at 827; *aff'd,* 587 F.2d at 538–39. The Court of Appeals "agree[d] with the district court's approach that the *degree* or *extent* of public confusion must be examined in order to ascertain whether there is any significant harm to the public by decreeing enforcement of the Settlement Agreement." 587 F.2d at 538 (emphasis in original). Therefore, the case stands for the proposition that once confusion is found, and once such confusion is found to be harmless—both factual inquiries—the policy of enforcing contracts will then predominate.

Based on the record before it, the district court in the instant case could not have concluded that the harm to the public from any public confusion that might have been demonstrated by further discovery would necessarily be insignificant. As set forth in note 1, *supra,* purchasers of insurance, unlike the buyers of pens in *T & T,* may well base their decisions on the reputation and financial strength of the supplier. Were BCH to become less financially sound than VISA, this distinction as to source might have disastrous consequences for policyholders who turn to BCH in times of genuine need.

3. Of course, the proof of facial violations of the express terms of the Settlement Agreement would not require evidence of public confusion.

or enforce a stipulated injunction. Fed.R. Civ.P. 60(b); *see, e.g., System Federation No. 91, Railway Employees' Department v. Wright,* 364 U.S. 642, 646–47, 81 S.Ct. 368, 370–71, 5 L.Ed.2d 349, 352–53 (1961). In this case, the district court's retention of jurisdiction necessarily included a commitment to allow an examination of the factual basis for a claim of public confusion. It is within this context that the denial of the Rule 56(f) application must be examined.

## II. Rule 56(f)

■ We review the denial of a Rule 56(f) application under the abuse of discretion standard. *Alghanim v. Boeing Co.,* 477 F.2d 143, 149 (9th Cir.1973). Because VISA's ability to establish its case for rescission or modification is so heavily dependent upon its ability to probe the facts and circumstances relating to public confusion and injury, we hold that it was an abuse of discretion to deny outright VISA's Rule 56(f) request for discovery of BCH's mailing lists and customer responses, which constituted the most probative evidence of such confusion.

In granting summary judgment against VISA on its claim for rescission or modification, the district court held that "plaintiff has made no showing of any significant or substantial harm to the public" and that, therefore, no rescission could be had under the reasoning of *T & T, supra.*

The court then denied VISA's Rule 56(f) application for discovery on two grounds: (1) the insufficiency of VISA's showing of public harm; and (2) the interest in the finality of settlements.

The interest in finality, by itself, does not appear to constitute a valid basis for denying a Rule 56(f) application, especially in a case such as this, where the court is re-quired to weigh the nature and degree of public confusion in determining whether to enforce or modify a stipulated judgment.

Therefore, the determinative inquiry is whether the district judge could reasonably have concluded that VISA had failed to make a sufficient showing that further discovery would raise a triable issue of fact as to public confusion. The cases construing Rule 56(f) suggest that the denial of a Rule 56(f) application is generally disfavored where the party opposing summary judgment makes (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists. Summary denial is especially inappropriate where the material sought is also the subject of outstanding discovery requests.

In *Zell v. Intercapital Income Securities, Inc.,* 675 F.2d 1041 (9th Cir.1982), for example, a shareholder sought discovery of the nature of lawsuits against a corporation on the ground that they affected the accuracy of proxy statements relating to that company. This Court reversed as premature the district court's grant of summary judgment against the shareholder in face of the shareholder's request for discovery, where nothing in the record precluded the possibility that relevant information might be discovered.[1]

The courts which have denied a Rule 56(f) application for lack of sufficient showing to support further discovery appear to have done so where it was clear that the evidence sought was almost certainly nonexistent or was the object of pure speculation. *See Exxon Corp. v. FTC,* 663 F.2d 120 (D.C.Cir.1980) (Rule 56(f) application properly denied where "there [were] simply no facts in the record" to support existence

---

**4.** *See also Jewel Cos. v. Pay Less Drug Stores North-West, Inc.,* 741 F.2d 1555, 1566 (9th Cir. 1984) (summary judgment on contract claim improper where extrinsic evidence required for interpretation of contract was unavailable to court or not fully litigated); *Portland Retail Druggists Assoc. v. Kaiser Found. Health Plan,* 662 F.2d 641, 646 (9th Cir.1981) (summary judgment premature where pretrial schedule pre-cluded discovery), *cert. denied,* —— U.S. ——, 105 S.Ct. 1230, 84 L.Ed.2d 368 (1985); *Alghanim, supra,* 477 F.2d at 148–49 (refusal to grant a continuance to allow production of affidavits constituted abuse of discretion); *XRT, Inc. v. Krellenstein,* 448 F.2d 772 (5th Cir.1971) (*per curiam* ) (summary judgment premature where district court failed to require production of documents held by defendants).

of object of plaintiff's proposed discovery, and where defendant's evidence affirmatively indicated nonexistence of object of discovery); *Schlesinger v. Central Intelligence Agency,* 591 F.Supp. 60, 64–65 (D.D.C.1984) (Rule 56(f) application denied where mere allegation of factual dispute specifically rebutted by moving party's affidavit).

Public confusion, the object of discovery in this case, is a broad phenomenon, the existence of which is neither easily proven nor easily disproven. Clearly, the most probative evidence of confusion was to be found by questioning the actual recipients of BCH's mailing efforts, especially those who purchased the insurance. This avenue of inquiry, which was identified by VISA's Rule 56(f) application, was foreclosed by the entry of summary judgment in conjunction with the denial of VISA's request that the court stay the summary judgment motion and compel responses to the outstanding discovery requests. The district court could have allowed limited discovery simply to establish the existence *vel non* of a sufficient basis for the broader discovery sought by VISA. *See generally* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* Sec. 2740, at 539 (1983). Given the existence of this alternative, it was an abuse of discretion to deny VISA's Rule 56(f) application. Therefore, with respect to the denial of the Rule 56(f) motion and the entry of summary judgment against VISA, the judgment below is reversed and remanded for further proceedings consistent with this opinion.

III. Attorneys' Fees

BCH claimed below that it was entitled under the terms of the Settlement Agreement to attorneys' fees for its successful defense in the contempt hearing. The district court denied the request on several grounds.

We affirm the denial of fees on the ground that the request was not timely under Northern District Local Rule 270–1, which provides that applications for attorneys' fees must be filed "within 60 days of entry of judgment terminating the action with respect to which the services were rendered." BCH did not file its fee motion within the sixty day period, and did not give the district judge any compelling reason that might have justified an extension.

While it may have been within the district judge's discretion to forgive such noncompliance, *see In re Comer,* 27 B.R 1018, 1022–23 (Bankr. 9th Cir.1983), *aff'd,* 723 F.2d 737 (9th Cir.1984), it was certainly not an abuse of discretion for him to decline to do so. Accordingly, the denial of attorneys' fees is affirmed. In view of our disposition of this cross-appeal, BCH's request for attorneys' fees on appeal is also denied.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

REINHARDT, Circuit Judge, dissenting in part:

The majority holds that VISA must be allowed discovery concerning the likelihood of public confusion because this factual inquiry is "a predicate to virtually every form of relief sought by VISA." Majority Opinion at 1474. The question is not, however, whether VISA needs to make a showing of public confusion to obtain the relief it requests, but whether the district judge could properly rule against VISA on its claims without a factual inquiry into confusion. Because I believe the district judge could so rule, I dissent in part. I concur only in part III of the opinion and in the majority's holding that VISA is entitled to clarification of the agreement, although not on the ground upon which the majority relies.

VISA's first request is for rescission or modification of the contract it made with BCH. As the majority recognizes, VISA cannot assert as grounds for such relief injury to its own business, but must instead show injury to the public. Once this showing is made, the court is to balance the public harm against competing interests in contract enforcement in deciding whether to modify or rescind the agreement. The majority characterizes this determination

as "essentially a factual inquiry into the degree or extent of public confusion." Majority Opinion at 1474. This description, however, oversimplifies a more complex process.

The traditional public interest rationale for protecting trademarks is that they assure the buyer that all products bearing a given trademark are produced by the same, albeit possibly anonymous, manufacturer. *See generally* 1 J. Gilson, *Trademark Protection and Practice* § 1.03[1] (1985); 1 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 3:3 (2nd ed. 1984). If identification of source were the public's only interest in trademark protection, the majority would be correct that evaluating the public interest involves no more than measuring the extent of public confusion. The more modern view of the public interest, however, emphasizes the role of trademarks in ensuring product quality rather than the identification of a particular producer. As this court has stated:

> The historical conception of a trade-mark as a strict emblem of source of the product to which it attaches has largely been abandoned. The burgeoning business of franchising has made trade-mark licensing a widespread commercial practice and has resulted in the development of a new rationale for trade-marks as representations of product quality.

*Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 48 (9th Cir.1971) (footnote omitted), *cert. denied*, 405 U.S. 955, 92 S.Ct. 1173, 31 L.Ed.2d 232 (1972); *see also* McCarthy, *supra*, at § 3:4. Moreover, as a purely commonsense matter, the identity of the producer is likely to be significant to the consumer mostly insofar as it ensures a given level of quality.

A finding of confusion, therefore, is only the beginning of the analysis. If there is no showing that the public is receiving lesser quality goods than it expects, then the harm to the public may be insignificant. *See T & T Manufacturing Co. v. A.T. Cross Co.*, 449 F.Supp. 813, 827 (D.R.I.), *aff'd*, 587 F.2d 533 (1st Cir.1978), *cert. denied sub nom. A.T. Cross Co. v. Quill Co.*, 441 U.S. 908, 99 S.Ct. 2000, 60 L.Ed.2d 377 (1979). Furthermore, even if public harm is shown, it should, as the majority recognizes, be weighed against competing interests in order to determine whether the contract is against public policy. *See, e.g., Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 328 (6th Cir.) ("weigh the public benefit in considering trademark principles in connection with the policy of upholding the law of contracts"), *cert. denied*, 414 U.S. 858, 94 S.Ct. 66, 38 L.Ed.2d 108 (1973). A court must consider the interest in enforcing contracts upon which parties rely, as well as the significant related interest in encouraging extra-judicial settlement of trademark disputes. *See, e.g., Wells Cargo, Inc. v. Wells Cargo, Inc.*, 606 F.2d 961, 965 (C.C.P.A.1979) (citing policy favoring settlement of trademark actions); *T & T Manufacturing*, 587 F.2d at 539 (same); *see also United States v. McInnes*, 556 F.2d 436, 441 (9th Cir.1977) (noting the "overriding public interest in settling and quieting litigation" (citation omitted)). If every settlement agreement is always open to attack on the ground that it allows confusion, parties will understandably be reluctant to enter into such contracts in the first place. *See T & T Manufacturing, supra*, 449 F.Supp. at 827. Given these significant interests in contract enforcement, a showing of public confusion should not in and of itself result in invalidation of the contract.[1]

---

**1.** It is important to remember that, to prevail, VISA must show injury to the public, not merely injury to its own business, because it waived its right to assert its own interests by agreeing to the Stipulated Judgment. Majority Opinion at 1474. To establish injury to one's own business by virtue of trademark infringement, a party must demonstrate a likelihood of confusion. *See* 15 U.S.C. § 1114(1) (1982). If a mere showing of confusion is also sufficient to invalidate a settlement contract on public policy grounds, then the distinction between public and private injury vanishes. Every such contract that turns out to cause private injury will be void as against public policy because by definition it creates a likelihood of confusion. If a party is not to be given more protection for its business interests than it bargained for, this result is untenable. *See T & T Manufacturing, supra*, 449 F.Supp. at 827.

This approach was taken in the leading case of *T & T Manufacturing Co. v. A.T. Cross Co.*, 449 F.Supp. 813 (D.R.I.), *aff'd*, 587 F.2d 533 (1st Cir.1978), *cert. denied sub nom. A.T. Cross Co. v. Quill Co.*, 441 U.S. 908 99 S.Ct. 2000, 60 L.Ed.2d 377 (1979), explicitly relied upon by the district court and cited with apparent approval by the majority. *T & T Manufacturing* involved, inter alia, the argument that a settlement agreement to which Cross was a party was void as against public policy because it allowed the sale of pens that infringed Cross's trademark. The district court found there was in fact a likelihood of confusion between Cross pens and the infringing Quill pens. 449 F.Supp. at 818–23. But the court cited the countervailing interests in contract enforcement and noted that in general the "balance strongly favors enforcement of the contract." *Id.* at 827. In light of its finding of a likelihood of confusion, however, the court squarely addressed the question the majority fails to answer: "whether [a likelihood of confusion] necessarily makes the contract against public policy." *Id.* The *T & T Manufacturing* court's answer was "no" for two reasons. First, the agreement at issue was not formed with an intent to deceive the public. Second, the court found "important the absence of an allegation that Quill pens are inferior to Cross pens." *Id.* Because there was no such showing, the harm to the public was "not significant, ... even though a consumer might claim harm because he sought the prestige of Cross but got Quill instead." *Id.*

Likewise, in the present case the agreement was not entered into with an intent to mislead the public. Furthermore, VISA has not alleged that BCH's insurance policies are of a lesser quality than those a consumer would expect from VISA itself.[2] Consequently, the district court properly concluded that even if VISA could show public confusion, the harm to the public would not outweigh competing interests. And because VISA could therefore not prevail regardless of the evidence it uncovered regarding confusion, the district court properly denied VISA's discovery request.

The majority also states that discovery regarding confusion is necessary in order to evaluate VISA's request for enforcement and clarification because "the Stipulated Judgment used the test of public confusion to circumscribe BCH's use of the VISA marks." Majority Opinion at 1474. Were it true that the agreement is drawn in terms of confusion, a conclusion the majority does not explain or support, I would agree that VISA must be allowed the discovery it requests.

The Stipulated Judgment, however, uses the term "confusion" only once, in a section of the agreement that is not involved in this dispute.[3] The rest of the agreement specifies certain permitted uses of the VISA marks and makes no mention of confusion. The magistrate found BCH's uses of the VISA marks to be within the terms of the agreement, and VISA does not contest this finding. No doubt VISA believed the specified uses would not lead to confusion. But that does not mean that if VISA turns out to be wrong it may ask a court to effectively change the agreement by "enforcing" or "clarifying" it in accordance with VISA's original intention to prevent

---

2. The majority recognizes that VISA offers insurance which is identical to that offered by BCH, but concludes that, because the relative financial strength of VISA and BCH would be a material factor in the consumer's decision, this issue requires further factual inquiry. Majority Opinion at 1473, 1474, nn. 1–2. But VISA has not alleged that BCH offers inferior insurance. Furthermore, the district judge did not prevent VISA from gathering or presenting evidence of inferiority. Thus, I cannot see how VISA's failure to avail itself of the opportunity to show the inferiority of BCH's insurance provides any grounds for refusing to enforce the agreement.

3. Paragraph 2(c) of the agreement provides in part that "[t]he VISA marks shall not be used in an overly repetitious manner, even for proper purposes, so as to create confusion as to sponsorship." VISA had alleged in general terms below that BCH violated the agreement, but at the contempt hearing before the magistrate VISA did not argue that BCH violated paragraph 2(c). VISA also does not contend on appeal that BCH violated paragraph 2(c).

confusion. *See, e.g., United States v. Armour & Co.*, 402 U.S. 673, 682, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971) ("the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it"); *Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 893 (9th Cir.1982) (refusing to "rewrite the parties' 'contract' by holding, in light of the purpose of only one of the parties to the consent judgment, that language which does not explicitly prohibit the use of [a word] does in fact do so").

Moreover, the majority's interpretation makes the agreement meaningless. A settlement does not indicate that the party filing suit prevailed. *See, e.g., Armour & Co., supra*, 402 U.S. at 681, 91 S.Ct. at 1757 (settlements generally involve compromise); *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir.1976) (purpose of a settlement is to avoid resolution of merits); *Dilley v. Alexander*, 440 F.Supp. 375, 379 (D.D.C. 1977) (settlement not an admission as to merits), *rev'd on other grounds* 603 F.2d 914 (D.C.Cir.1979), *opinion clarified* 627 F.2d 407 (D.C.Cir.1980). VISA had the right before the parties executed the agreement to claim BCH's use of the marks created confusion—that is the essence of an allegation of trademark infringement. The point of the agreement was that VISA waived its right to contest certain specified uses. If the agreement is instead read to permit only those uses which are both specifically enumerated and do not cause confusion, then BCH gained nothing by executing the agreement, and VISA gave up nothing. The agreement is meaningless under this interpretation because the parties are in exactly the same positions now that they were in before the agreement.

Nevertheless, VISA is entitled to clarification on a different ground. In the contempt hearing, the magistrate found that the Stipulated Judgment was ambiguous. Given this ambiguity and the provision in the agreement providing for judicial construction, the district court should have granted VISA's request for clarification of the Stipulated Judgment.

In short, the majority relies for its holding on two wholly conclusory statements, one of which is incorrect as a matter of law and one as a matter of fact. First, the majority assumes without analysis that BCH cannot rely on the express provisions of the Stipulated Judgment unless they serve to preclude public confusion, and second it states erroneously that the agreement as a whole is in fact cast in terms of precluding confusion. In my view, a more precise review of these issues leads to the conclusion that the district judge acted properly in denying VISA's Rule 56(f) discovery request. Accordingly, I respectfully dissent.