52 F.3d 333
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, an Illinois
Corporation, Plaintiff-Appellant,
v.
COMMERCIAL UNION INSURANCE COMPANY, a Massachusetts
Corporation, Defendant-Appellee.
 No. 93-35798.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 9, 1995.
Decided April 17, 1995.
 
 1
 Before: ALARCON and BRUNETTI, Circuit Judges, and KELLEHER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 In this diversity action, International Surplus Lines Insurance Company ("International") appeals from the denial of its motion to postpone the hearing on Commercial Union Insurance Company's ("Commercial") motion for summary judgment, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, and the order granting Commercial's motion for summary judgment. Commercial requests an award of attorneys' fees for the expenses it incurred in presenting this appeal. We affirm the district court's denial of International's Rule 56(f) motion because International failed to demonstrate diligence in prior discovery attempts, and made no showing that the evidence it sought would require denial of the motion for summary judgment as required by Qualls v. Blue Cross of Cal., Inc., 22 F.3d 839, 844 (9th Cir.1994). We also affirm the order granting summary judgment because International failed to produce any evidence to establish that Dr. Pardo's bodily injury occurred during the effective dates of Commercial's policy. We deny Commercial's request for an award of attorneys' fees because we conclude that International's appeal was not frivolous.
 
 I.
 
 4
 International contends that the district court abused its discretion in denying its Rule 56(f) motion. International asserts that there is evidence to support its position that Dr. Pardo's bodily injury occurred prior to the termination of Commercial's policy. Further, International asserts that denial of its Rule 56(f) motion punishes International for the failure of its former counsel to meet the deadlines set by the magistrate judge and the district court.
 
 
 5
 We review the denial of a Rule 56(f) motion for abuse of discretion. Qualls, 22 F.3d at 844; Harris v. Duty Free Shoppers Ltd. Partnership, 940 F.2d 1272, 1276 (9th Cir.1991). A district court abuses its discretion in denying a Rule 56(f) motion only if "the movant diligently pursued its previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment." Qualls, 22 F.3d at 844 (emphasis in the original) (citations omitted). We have consistently refused to postpone summary judgment proceedings when a party has been dilatory in obtaining discovery or expert witnesses. See e.g., Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir.1986) (a litigant who does not engage in discovery cannot argue that the district court abused its discretion in ruling on a summary judgment motion).
 
 
 6
 International did not request an extension of the discovery cut-off date or the motions cut-off date that were set by the district court. Additionally, International failed to depose Commercial's expert, Dr. Frank Parker. International, in its reply brief, concedes that "evidence concerning its Rule 56(f) motion was in its file," at the time the continuance was sought. Therefore, a continuance was clearly unnecessary to obtain such evidence. International failed to fulfill the first prong of the Qualls' analysis.
 
 
 7
 International has failed to demonstrate that additional discovery would have precluded the district court from granting Commercial's motion for summary judgment. Although International asserts that evidence is available which will show that Dr. Pardo's bodily injury occurred during the effective dates of Commercial's policy, it failed to disclose to the district court the nature of the alleged evidence. Accordingly, International has failed to meet its burden of establishing that the evidence it sought will raise a genuine issue of material fact. See VISA Int'l Serv. Ass'n v. Bankcard Holders of Am., 784 F.2d 1472, 1475 (9th Cir.1986) (denial of Fed.R.Civ.P. 56(f) is appropriate if the movant fails to make a sufficient showing that further discovery would raise a genuine issue of fact).
 
 
 8
 Additionally, International contends that the district court erred in denying its Rule 56(f) motion because the denial of its motion punishes International for the ineptitude of prior counsel. Evidence that International's attorney missed each of the filing deadlines set by the district court does not demonstrate that the district court abused its discretion in denying International's Rule 56(f) motion. Rule 56(f) is designed to allow a party to request additional discovery before the district court renders a decision. It is not a method for the courts to rectify the apparent ineptitude of counsel. In Link v. Wabash R.R., 370 U.S. 626 (1962), the Supreme Court disposed of a similar contention as follows:
 
 
 9
 There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation....
 
 
 10
 Id. at 633-34 (citations omitted); see also Ringgold Corp. v. Worrall, 880 F.2d 1138, 1141-42 (9th Cir.1989) (appellants have a duty to keep track of the progress of their lawsuit; they are considered to have notice of all facts known to their lawyers); Kung v. FOM Inv. Corp., 563 F.2d 1316, 1318 (9th Cir.1977) ("while it may seem unfair to [a litigant] that the delays of his attorneys should be visited upon him, litigants are bound by the conduct of their attorneys"); Anderson v. Air West, Inc., 542 F.2d 522, 525 (9th Cir.1976) (plaintiff could not avoid dismissal of the action by arguing that she was an innocent party who will be made to suffer for the errors of her attorney). Accordingly, the district court did not abuse its discretion in denying International's Rule 56(f) motion.
 
 II.
 
 11
 International also seeks reversal of the order granting Commercial's motion for summary judgment. International contends that the district court erred in finding that there are no genuine issues of material fact regarding the date that Dr. Pardo's bodily injury occurred. Additionally, International asserts that the district court erred in failing to adopt the "exposure theory" of liability. International also asserts that this court may consider the views expressed in Casarett and Doull's, Toxicology: The Basic Science of Poisons, Third Edition ("Toxicology treatise") in determining whether there was a genuine issue of material fact regarding the date of Dr. Pardo's bodily injury, notwithstanding the fact that the Toxicology treatise was attached to an unsigned affidavit. International maintains that the non-moving party does not need to produce evidence in a form that would be admissible at trial to demonstrate that there is a genuine issue of material fact requiring trial. Finally, International contends that because the terms of Commercial's policy are ambiguous, they must be interpreted in International's favor. We address each of these contentions separately.
 
 
 12
 We review a grant of summary judgment de novo. Qualls, 22 F.3d at 842. In considering Commercial's motion for summary judgment, this court must view the evidence in the light most favorable to International. Id.
 
 
 13
 In 1987, Dr. Ignacio A. Pardo, an orthodontist, filed a products liability action against Confi-Dental in the district court ("the underlying action"). Dr. Pardo's complaint asserted that his use of Mono-Lok in his orthodontic practice caused him bodily injury. Mono-Lok is a bonding adhesive that is manufactured by Confi-Dental.
 
 
 14
 International and Commercial were successive liability insurers for Confi-Dental. Commercial provided liability coverage for Confi-Dental from December 1981 through April 16, 1985. International provided liability coverage for Confi-Dental from April 16, 1985 through April 16, 1986. Commercial denied coverage in the underlying action. International settled the claim with Dr. Pardo for $400,000. On January 22, 1991, International filed this action for contribution and indemnification.
 
 
 15
 It is undisputed that Dr. Pardo first noticed problems on his fingertips in the form of small red pinpoints on June 18, 1985. This condition was diagnosed in September of that year as allergic contact dermatitis ("dermatitis").
 
 
 16
 In support of its motion for summary judgment, Commercial introduced the affidavit of its expert, Dr. Parker. Dr. Parker alleged as follows:
 
 
 17
 [Dermatitis] is a cell-mediated delayed hypersensitivity. Contact with a substance which the body may recognize as foreign, called an allergen, will initiate a biochemical cellular process in some individuals. During this process, called sensitization, certain types of cells (lymphocytes) retain the memory of the foreign substances or allergen. Sensitization is a non-localized immune response of the body. A repeat contact with the allergen results in recognition of the foreign substance, movement of the sensitized lymphocytes to the site of contact, and secretion of chemicals. These chemicals induce an inflammatory reaction on the skin, i.e., [dermatitis].
 
 
 18
 [Dermatitis] is called a "delayed" hypersensitivity because of the delay between the repeat contact with the allergen which then induces an inflammatory reaction, known as an eczematous eruption of small pinpoint blisters. The length of the delay is more likely than not between 48 and 72 hours after the repeat contact. No injury, or tissue damage, takes place until the repeat contact with the allergen.
 
 
 19
 The repeat contact which elicited the small red blisters on Dr. Pardo's fingers on June 18, 1985, would more likely than not have taken place 48 to 72 hours prior to June 18, 1985. It is my opinion, based upon the above recited facts, that the contact which caused bodily injury, evidenced by inflammation and tissue damage to Dr. Pardo's fingers, took place more likely than not approximately 48 to 72 hours before June 18, 1985.
 
 
 20
 (emphasis added).
 
 
 21
 Commercial's liability policy provides that it "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence." Bodily injury is defined in the policy as "bodily injury, sickness or disease sustained by any person which occurs during the policy period...."
 
 
 22
 On July 3, 1991, the district court issued an order that set a December 2, 1991 discovery cut-off date. Further, the court's order stated that "all motions, including motions in limine and motions for summary judgment (including partial summary judgment) [shall] be filed on or before December 16, 1991. BRIEFING SHALL BE IN ACCORDANCE WITH LOCAL RULE 220-1."[1] Id. (emphasis in the original). International did not request extensions of these deadlines.
 
 
 23
 On December 16, 1991, Commercial filed its motion for summary judgment. International did not file a brief in opposition to Commercial's motion for summary judgment. On December 17, 1991, International filed a motion for summary judgment or for partial summary judgment; December 17, 1991 was one day after the motions cut-off deadline that had been set by the court. International did not file a brief in support of this motion.
 
 
 24
 The action was referred to a magistrate judge who requested status reports from the parties. On March 27, 1992, International filed a "brief and status report." During a July 22, 1992, hearing, the magistrate judge denied International's motion for summary judgment or partial summary judgment because International had filed its motion after the motions cut-off deadline and it had not filed a brief in support of its motion. The magistrate judge acknowledged that on March 27, 1992, International had filed a "brief and status report." The magistrate judge noted, however, that even if International intended the "brief and status report" to be its brief in support of its motion for summary judgment, it was untimely.
 
 
 25
 The magistrate judge also noted that International had not filed an opposition to Commercial's motion for summary judgment, unless International intended its "brief and status report" to be its opposition to Commercial's motion. The magistrate judge stated that if the "brief and status report" was intended to be an opposition to Commercial's motion for summary judgment, it was untimely. For that reason, the magistrate judge struck International's brief and status report from the record.
 
 A.
 
 26
 International asserts that the Toxicology treatise supports its contention that there is a genuine issue of material fact in dispute regarding whether Dr. Pardo's bodily injury occurred prior to the expiration date of Commercial's insurance coverage of Confi-Dental. The Toxicology treatise was attached to Dr. Gold's unsigned affidavit, which was submitted by International on July 21, 1992, in support of its Rule 56(f) motion.
 
 
 27
 On July 22, 1992, during the hearing on Commercial's motion for summary judgment, Commercial objected to the admissibility of the treatise based upon lack of foundation. The magistrate judge did not rule upon Commercial's objection. International submitted a signed copy of Dr. Gold's affidavit, dated July 31, 1992, along with the Toxicology treatise, which the clerk filed, inadvertently, on August 5, 1992. International acknowledges that this affidavit was improperly filed because it states that "International's counsel understood from the rulings of the U.S. Magistrate Judge that the filing of Dr. Gold's affidavit would not be permitted." Notwithstanding the procedural bar to the consideration of the affidavit and the Toxicology treatise, the magistrate judge utilized a section of the Toxicology treatise in his "Findings and Recommendation of U.S. Magistrate Judge" dated January 7, 1993. On January 28, 1993, Commercial filed its "reply to objections" to the magistrate judge's findings and recommendation, pursuant to 28 U.S.C. Sec. 636. Once again, Commercial objected to the admissibility of the Toxicology treatise.
 
 
 28
 Over Commercial's objection that the Toxicology treatise was inadmissible, the district court relied upon it in explaining its July 26, 1993 ruling in favor of Commercial. On appeal, Commercial argues that this court cannot consider the Toxicology treatise in conducting its independent review of the record to determine whether there is a genuine issue of fact in dispute in this matter.
 
 
 29
 "It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181-82 (9th Cir.1988). Rule 56(c) of the Federal Rules of Civil Procedure provides that a reviewing court may consider "depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether there is a genuine issue as to a material fact. International argues that this court may consider the Toxicology treatise because Commercial has not questioned its authenticity or reliability. International relies on Celotex Corp. v. Catrett, 477 U.S. 317 (1986) and Curnow v. Ridgecrest Police, 952 F.2d 321 (9th Cir.1991), cert. denied, 113 S.Ct. 460 (1992), to support this proposition. This reliance is misplaced. Neither decision eliminates the requirement that a foundation must be presented to demonstrate the authenticity of a proffered document. Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir.1987).
 
 
 30
 In Celotex Corp., the Court reminded us that "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of materials listed in Rule 56(c)." Celotex Corp., 477 U.S. at 324. Rule 56(c) does not authorize the non-moving party to oppose a motion for summary judgment by producing an unsworn affidavit. In Curnow, we held that responses to questions under oath that were transcribed by a shorthand reporter were admissible in opposition to a motion for summary judgment "because [the witness'] answers to the questions were given under oath." Curnow, 952 F.2d at 324. Contrary to International's conclusion, Curnow does not permit this court to review an unsworn affidavit.
 
 
 31
 We note also that International offered no expert testimony to lay a foundation for the admissibility of the views set forth in the Toxicology treatise and to explain whether the authors' views were in conflict with Dr. Parker's opinion that the contact that caused the bodily injury did not occur prior to April 16, 1985. Accord Mason v. Clark, 920 F.2d 493, 495 (8th Cir.1990) (an unsigned affidavit is a contradiction in terms because by definition an affidavit is a sworn statement in writing made under oath or on affirmation before an authorized officer). "This court has consistently held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." Canada, 831 F.2d at 925 (citations omitted).
 
 B.
 
 32
 International argues that Dr. Pardo's deposition testimony demonstrates that there is a genuine issue of fact regarding whether he came into contact with Mono-Lok during the effective dates of Commercial's policy. International relies on the following portions of the deposition:
 
 
 33
 Q. [by Richard Ranney, counsel for Confi-Dental Products Company] From the way you've described it, it didn't sound like there is any possibility for any of the primer or paste to get on to your hands or fingers; is that true?
 
 
 34
 A. [Dr. Pardo] That is what I believed.
 
 
 35
 Q. So do you believe that you were performing the procedure without getting any primer on your fingers or without getting any paste on your fingers?
 
 
 36
 A. Yes.
 
 
 37
 Q. Do you believe that now?
 
 
 38
 A. Now I realize that I must have come into contact somehow.
 
 
 39
 Q. You didn't use your fingers to spread the primer or paste on the brace or the tooth?
 
 
 40
 A. No.
 
 
 41
 Q. Or to mix it?
 
 
 42
 A. No.
 
 
 43
 Q. Do you recall the primer or paste ever coming into contact with your skin surface, whether on your fingers or anywhere else?
 
 
 44
 A. Not that I recall.
 
 
 45
 Dr. Pardo's deposition also reflects the following testimony:
 
 
 46
 Q. So apparently you were aware that you had come in contact with these materials?
 
 
 47
 A. I was not consciously aware that I had come into contact. But as I see it now, I think it is--I had to have come into contact inadvertently somehow.
 
 
 48
 Q. And it is impossible to practice orthodontics, as you said, without coming in contact with these materials?
 
 
 49
 A. Right.
 
 
 50
 Q. When you were cleaning instruments, did you come in contact with the material that was still on the instruments?
 
 
 51
 A. I may have. I don't know. As I said, consciously I was not aware that I was coming into contact, but somewhere in the process there must have been contact.
 
 
 52
 To withstand Commercial's motion for summary judgment, International had to "do more than simply show that there is some metaphysical doubt" as to whether Dr. Pardo came into contact with Mono-Lok during the effective dates of Commercial's policy. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To survive a motion for summary judgment International was required to present evidence to establish that "reasonable jurors could find by a preponderance of the evidence," that Dr. Pardo's fingers initially came into contact with Mono-Lok prior to April 16, 1985, and that subsequently, prior to the expiration date of the policy, he experienced a repeat contact with the substance. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). A jury is permitted only to draw reasonable inferences and should not resort to speculation. British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir.1978), cert. denied, 440 U.S. 981 (1979).
 
 
 53
 Dr. Pardo testified that he was not consciously aware of coming into contact with Mono-Lok. His speculation that he must have come into contact with it is insufficient to permit a reasonable trier of fact to conclude that such contact occurred within the period covered by Commercial's liability policy. The existence of a mere scintilla of evidence is not sufficient to withstand a motion for summary judgment. Anderson, 477 U.S. at 251; see also Wright v. Schock, 571 F.Supp. 642, 663 (N.D.Cal.1983) aff'd, 742 F.2d 541 (9th Cir.1984) (plaintiffs failed to raise a genuine issue of material fact regarding defendants' knowledge of fraud by asserting that defendants "must have known" about the fraud).
 
 
 54
 The district court concluded that the circumstantial evidence equally supported an inference that the "sensitization causing contact occurred before April 16, 1985, and an inference that it occurred after that date." Even construing Dr. Pardo's testimony as evidence that sensitization occurred prior to April 16, 1985, Dr. Parker's uncontradicted expert opinion established that the bodily injury did not occur until there was a repeat contact with the substance causing an allergic reaction, approximately 48 to 72 hours prior to June 18, 1985.
 
 C.
 
 55
 International argues that the district court erred in granting Commercial's motion for summary judgment because it should have determined that Dr. Pardo suffered bodily injury on the date that he was first "exposed" to Mono-Lok. To support its position, International refers this court to three cases in which the plaintiffs' bodily injury was caused by their first exposure to asbestos. Keene Corp. v. Insurance Co. of N. Am., 667 F.2d 1034 (D.C.Cir.1981), cert. denied, 455 U.S. 1007 (1982); Porter v. American Optical Corp., 641 F.2d 1128 (5th Cir.), cert. denied, 454 U.S. 1109 (1981); and Insurance Co. of N. Am. v. Forty-Eight Insulations, Inc., 633 F.2d 1212, 1218-19 (6th Cir.1980), clarified in part, 657 F.2d 814 (6th Cir.), cert. denied, 454 U.S. 1109 (1981) ("Forty-Eight "). In each of these cases the courts held that the expert testimony demonstrated that bodily injury results from an initial exposure to asbestos. Keene Corp., 667 F.2d at 1046; Porter, 641 F.2d at 1145; Forty-Eight, 633 F.2d at 1218-19. International's reliance on these cases is misplaced. As discussed above, International failed to demonstrate that Dr. Pardo's first contact with or exposure to Mono-Lok occurred during the effective dates of Commercial's policy. Further, International failed to rebut Dr. Parker's expert opinion that bodily injury does not occur until there is a repeat contact with an allergen such as Mono-Lok. The asbestos exposure cases have no application to the question presented on this matter.
 
 D.
 
 56
 International's final argument is that the definition of "bodily injury" in Commercial's policy is ambiguous because it is defined by repeating the term "bodily injury." We disagree. We are required to apply Montana law in this diversity of citizenship action. See Nevada Power Co., v. Monsanto Co., 955 F.2d 1304, 1306 (9th Cir.1992) (state substantive law applies in a diversity of citizenship action). A similar contention regarding whether the phrase "bodily injury" is ambiguous because its definition contains the words "bodily injury" was rejected by the Supreme Court of Montana in Bain v. Gleason, 726 P.2d 1153, 1159 (Mont.1986). Like Commercial's policy, the policy that was before the Bain court defined a "bodily injury" as a "bodily injury, sickness or disease." Id. One of the parties in Bain asserted that defining a term by repeating the same term creates an inherent ambiguity. Id. The court rejected this argument and stated that "[b]odily injury does not become ambiguous simply because it is defined as bodily injury, especially since the terms can be plainly understood as meaning physical injury to a person." Id.
 
 CONCLUSION
 
 57
 Dr. Parker's affidavit fulfilled Commercial's burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. International failed to provide the district court with evidence that rebutted Dr. Parker's expert opinion that Dr. Pardo did not suffer any bodily injury until approximately 48 to 72 hours prior to June 18, 1985. We affirm the order granting Commercial's motion for summary judgment because International failed to establish that there was a genuine issue of material fact regarding whether Dr. Pardo suffered bodily injury during the effective dates of the Commercial policy.
 
 
 58
 We decline Commercial's request for an award of attorneys' fees for the expenses it incurred in presenting this appeal. We are not persuaded that International acted in bad faith, or that this appeal was frivolous.
 
 
 59
 AFFIRMED.
 
 
 
 *
 Honorable Robert J. Kelleher, Senior United States District Judge, for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Local Rule 220-1 for the United States District Court for the District of Montana states that:
 (a) Upon serving and filing a motion, or within 5 days thereafter, the moving party shall serve and file a brief. The adverse party shall have 10 days thereafter within which to serve and file an answer brief.... Failure to file briefs within the prescribed time may subject any motion to summary ruling. Failure to file a brief by the moving party shall be deemed an admission that, in the opinion of counsel, the motion is without merit, and, failure to file a brief by the adverse party shall be deemed an admission that, in the opinion of counsel, the motion is well taken.
 Montana Local Rule 220-1.